## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 31 2016, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Harold E. Amstutz
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of:
G.B. (Minor Child),

S.K. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

March 31, 2016

Court of Appeals Case No.
79A05-1509-JT-1534

Appeal from the Tippecanoe Superior Court

The Honorable Faith A. Graham, Judge

The Honorable Tricia Thompson, Magistrate

Trial Court Cause No.
79D03-1503-JT-26

**Najam, Judge.**

## Statement of the Case

S.K. ("Mother") appeals the trial court's termination of her parental rights over her minor child G.B. ("Child"). Mother raises a single issue for our review, namely, whether the Indiana Department of Child Services ("DCS") presented sufficient evidence to support the termination of her parental rights. We affirm.

## Facts and Procedural History

Mother gave birth to Child on July 16, 2011. Child's father, T.B. ("Father"), and Mother were not married at the time, but lived together.[1] In January 2014, DCS investigated reports that Father and Mother were "homeless and bouncing from place to place" and using illegal drugs "daily." DCS Ex. 2 at 12. After a preliminary investigation, on February 7, DCS filed a petition alleging that Child was a child in need of services ("CHINS"). Following a hearing on March 4, the trial court ordered that Child be removed from parents' care. DCS was unable to locate parents or Child until March 10, at which time DCS took Child into custody. Child was initially placed in a foster home, but she was placed with a paternal uncle and aunt on March 20.

Following a factfinding hearing on April 1, the trial court adjudicated Child to be a CHINS. And following a dispositional hearing on April 15, the trial court issued a parental participation decree, which required Mother to: participate in supervised

---

[1] The trial court also terminated Father's parental rights, but he does not participate in this appeal.

visits with Child; submit to random drug screens; complete a substance abuse assessment and follow all recommendations; complete a parenting assessment and follow all recommendations; participate in home based case management; participate in couples counseling; and participate in a mental health evaluation and follow all recommendations. Mother did not comply with that order. For instance, she failed multiple drug screens and did not show up for multiple drug screens; she did not maintain minimum contact with DCS; she did not regularly attend couples counseling; she did not attend case management appointments; and she was inconsistent with visits with Child. After a warrant was issued for Mother's arrest[2] on October 29, Mother discontinued all participation in the court-services other than visitation. And Mother stopped visits with Child after December 3. On December 22, Mother and Father were both discharged from all services due to their noncompliance.

[4] Mother was arrested on the outstanding warrant on February 28, 2015, and she spent one week in jail. After her discharge, on March 6, DCS filed a petition for the involuntary termination of Mother's parental rights to Child. Following an evidentiary hearing on the petition on June 4, the trial court entered the following relevant findings and conclusions in support of terminating Mother's parental rights:

## FINDINGS OF FACT

---

[2] The warrant was issued for Mother's "failure to attend a court hearing and failing to pay a traffic ticket." DCS Ex. 3 at 5.

* * *

2. Tippecanoe County Department of Child Services ("DCS") received four reports regarding this family between January 19th and 30th of 2014. These reports included allegations that parents were homeless and bouncing from place to place, using drugs such as methamphetamine and heroin, transporting drugs for Father's brother, and a history of domestic violence.

3. Investigation revealed that Father recently lost his job and the family had to leave their apartment. The family stayed at several places during the investigation and did not maintain contact with DCS. On January 23, 2014, Mother denied that she and Father were using drugs. Drug screens of the parents were requested but the parents did not submit to those screens. The family could not be located again until February 3, 2014 due to moving from residence to residence. Mother's drug screen on that date was negative for all substances. Drug screens of the child and Father were requested. Mother did not have the child tested when the request was made and DCS was not able to locate the family again for approximately two weeks. Mother and the child were tested on February 18, 2014 and both were negative. . . .

* * *

7. Pursuant to dispositional orders, Mother was offered the following services: substance abuse assessment, parenting assessment, home based case management, couples counseling, mental health evaluation, visitation with the child, and random drug screens. . . . These services were exhaustive and were designed to address the parents' difficulties. Evaluations revealed no barriers to the parents' ability to participate in services and achieve reunification.

* * *

9. A permanency hearing was held on March 6, 2015 at which time the permanent plan was determined to be initiation of proceedings for termination of parental rights and adoption. Neither parent had yet shown a real investment in reunification. DCS filed its petitions in the above-referenced Cause No. on March 6, 2015. The evidentiary hearing on the Verified Petitions to Terminate Parental Rights was held on June 4, 2015. At the time of the termination hearing, the circumstances of the parents had not improved. The parents were in no better position to care for the child.

10. Mother has a long-term history of instability and substance abuse. Mother is currently unemployed and completely dependent on her boyfriend for support. She was employed at two (2) different jobs during the CHINS case, with the longest period of employment lasting for approximately three (3) months.

11. Mother has been dependent on others for housing and transportation throughout the CHINS case. She and Father had an apartment for a period of time but they lost that housing early in the case. Mother then stayed with different family and friends until January of 2015 when she and Father separated. Mother moved in with a new boyfriend when they started dating, also during the month of January of 2015. Mother is completely dependent on this boyfriend for housing, support, and transportation.

12. Mother's boyfriend has been named the alleged father in another CHINS case and he has been in prison previously.

13. Mother was offered home based case management services to help address housing, transportation, employment, and budgeting issues. Mother attended case management services until October of 2014. Mother was discharged from the first provider, then missed approximately twenty appointments with the second provider. Mother was discharged from the second

provider as well. Attempts to provide home based case management for Mother were not successful due to the number of missed appointments and her insistence that she could do things on her own.

14. Mother's attendance in services was inconsistent at the beginning of the case, then worsened over the summer of 2014. By that time, Mother had lost her housing, employment and transportation and was still using drugs. By October of 2014, Mother stopped attending all services other than visitation. Mother then completely disappeared after a visit on December 3, 2014 due to an outstanding warrant for failing to appear for a Driving While Suspended case. Thereafter, Mother did not participate in any services or visits with her child until she was arrested on the warrant on February 28, 2015.

15. Throughout the CHINS case, Mother has struggled with drug addiction. Mother tested positive for hydrocodone in a hair drug screen taken at the beginning of the CHINS case. After that, Mother consistently tested positive for opiates, Suboxone, Oxycodone, or Hydrocodone until she disappeared. Mother was not tested from November 26, 2014 until March 12, 2015. On March 12, 2015, Mother tested positive for amphetamine, approximately one week after she was released from incarceration and after the Permanency Planning Hearing. Mother also failed to appear for multiple screens throughout the CHINS case.

16. Mother was offered a substance abuse assessment and services to address her addiction issues. Mother failed to complete the assessment. DCS also offered Mother inpatient treatment but she declined to attend. Mother failed to address substance abuse issues despite fifteen months of services being offered.

17. Mother testified she would go to inpatient treatment if required to do so to get her daughter back, but does not believe

that she needs any treatment. According to Mother, she is now stable and cannot "just leave home" to go to a rehabilitation facility.

18. Mother was sporadic in her attendance at visits with the child and she was not always prepared for the visits that she attended.

19. Mother's visits never progressed beyond fully supervised. Mother failed to attend any visits after December 3, 2014 due to a warrant for her arrest.

20. Mother admits that she was not doing well throughout most of the case but argues that she is stable now. Mother's stability, however, is completely dependent on her boyfriend of six months. Further, Mother failed to contact DCS for three months of the six months she dated boyfriend and also failed to participate in services during this entire time.

\* \* \*

32. The child is adjusting well in the relatives' home and she is attached to them. The child was evaluated by GLASS and it was determined that she has delays in multiple areas. The relative placement is providing the stability that the child needs to catch up and be on target to start kindergarten. The relative placement is willing to continue providing care for the child and to adopt the child if the parents' rights are terminated. If they cannot adopt the child for any reason, the child is readily adoptable.

33. CASA, Kelsey Andrews, also supports termination of parental rights in the best interests of the child. Throughout the case, CASA has observed the same pattern of failure to engage in services, lack of stability and drug use by the parents. Both parents missed multiple visits with the child and failed to maintain contact with DCS and service providers. Mother disappeared for several months during the CHINS case and only

reappeared after she was arrested. CASA also believes that parents have not sufficiently addressed employment or housing issues that existed throughout the case. CASA does not feel that the parents' pattern of behavior is likely to change if given more time. In contrast to the parents' instability, CASA observed that the child has been stable in the home of the relative placement. CASA believes it is in the best interests of the child to be adopted by the relative placement.

34. Although the parents love this child, neither has the ability to meet the child's needs. It is not safe for the child to be in the care of Mother or Father. The parents' history of instability and substance use continues. All imaginable services have been offered and nothing is singularly different in today's circumstances since the time of removal. If anything, the circumstances of the parents are worse now than at the beginning of the case. To continue the parent-child relationships would be detrimental to the child. The child needs permanency now.

CONCLUSIONS OF LAW

1. There is a reasonable probability that the conditions that resulted in the removal of the child from the parents' care or the reasons for the continued placement outside the home will not be remedied. Neither parent has yet to demonstrate the ability or willingness to make lasting changes from past behaviors. There is no reasonable probability that either parent will be able to maintain stability and remain substance free in order to care and provide adequately for this child.

2. Continuation of the parent-child relationships poses a threat to the well-being of the child. The child needs stability in life. The child needs parents with whom the child can form a permanent and lasting bond to provide for the child's emotional and psychological as well as physical well-being. The child's well-being would be threatened by keeping the child in parent-

child relationships with either parent whose own choices and actions have made them unable to meet the needs of this child.

3. DCS has a satisfactory plan of adoption for the care and treatment of this child following termination of parental rights. . . .

4. For the foregoing reasons, it is in the best interests of [Child] that the parental rights of [Mother] and [Father] be terminated.

Appellant's App. at 10-14. This appeal ensued.

# Discussion and Decision

We begin our review of this appeal by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cnty. Ofc. of Family & Children (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove, among other things:

(B) that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

\* \* \*

(C) [and] that termination is in the best interests of the child . . . .

Ind. Code § 31-35-2-4(b)(2) (2015). That statute provides that DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights. DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[7] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cnty. Ofc. of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cnty. Ofc. of*

*Family & Children (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[8] Here, in terminating Mother's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Ofc. of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[9] Mother contends that the evidence is insufficient to support the trial court's findings underlying its conclusions that Mother will not remedy the conditions that resulted in Child's removal; that the continuation of the parent-child relationship poses a threat to the well-being of Child; and that termination is in the best interest of Child. Because Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, we only address the sufficiency of the evidence to support the trial court's conclusions that continuation of the parent-child relationship poses a threat to Child's well-being and that termination is in Child's best interest. And we address each of those contentions in turn.

## *Continuation of the Parent-Child Relationship*

[10] In support of this conclusion, the trial court stated as follows:

> The child needs stability in life.  The child needs parents with whom the child can form a permanent and lasting bond to provide for the child's emotional and psychological as well as physical well-being.  The child's well-being would be threatened by keeping the child in parent-child relationships with either parent whose own choices and actions have made them unable to meet the needs of this child.

Appellant's App. at 14.  In response, Mother contends that

> DCS presented no evidence that the mother poses a threat to [Child]'s safety or well[-]being.  There are no allegations of abuse of [Child] committed by [Mother].  There is no evidence that the mother is violent or presents a danger to [Child].  The DCS caseworker acknowledged they didn't have any worry the mother would ever intentionally or willfully harm the child, and that every report from visitation indicates a sincere affection between parent and child.

Appellant's Br. at 15.[3]  Mother's contention misses the point.

[11] A trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his physical, mental, and social growth is permanently impaired before terminating the parent-child relationship.  *Shupperd v. Miami Cnty. Div. of Family & Children (In re E.S.)*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002).  When

---

[3]  Mother purports to "disagree with and contest[]" four of the trial court's findings, but she does not present cogent argument to show that each of the "challenged" findings is not supported by the evidence. Appellant's Br. at 10.

the evidence shows that the emotional and physical development of a child in need of services is threatened, termination of the parent-child relationship is appropriate. *Id.*

[12] The undisputed evidence shows that, during the course of the CHINS proceedings, Mother barely maintained contact with her family case manager; she did not maintain suitable or stable housing; she has not consistently visited with Child; she did not follow through on recommended individual therapy, including additional substance abuse evaluation; she failed to submit to multiple drug screens; and, when she did submit to drug screens, they almost always indicated continued drug abuse. In short, Mother has been more non-compliant with the court's orders than compliant. Mother only attended approximately twenty out of forty scheduled case management sessions. Mother discontinued all contact with DCS and Child from December 4, 2014, until her arrest on February 28, 2015. Thereafter, Mother was not permitted even supervised visits with Child, but was only able to talk to Child over the phone on four occasions. Thus, Mother has not had in-person visitation with Child since December 3, 2014.

[13] While Mother has shown improvement since DCS filed its petition to terminate her parental rights to Child on March 6, 2015, Mother failed a drug screen on March 12, 2015, and she tested positive for alcohol consumption in May 2015. When asked to identify "the longest period of time that [she had] stayed clean from drugs," Mother responded that the three months prior to the termination hearing was the longest period of time she had abstained from using drugs. Tr. at 103. Despite her long history of substance abuse, Mother insisted that she did not "think

that [a drug rehabilitation program] would be progressive" for her. *Id.* at 102. Mother testified that she has "a life now too outside of just doing DCS" and she could not "just leave [her] home and go to a rehab facility." *Id.* In short, the undisputed evidence shows that, despite a long history of untreated substance abuse and only a very recent and short period of staying away from drugs, Mother does not think that she would benefit from participation in a rehabilitation program.

[14] When asked whether Mother could be a safe and suitable parent to Child, Timothy Adams, the case manager who supervised visits and otherwise assisted Mother, testified that Mother was a "capable human being," but that she needed to "get off the drugs, find housing, maintain that housing, find employment, maintain that employment, and have some basic parent education." *Id.* at 140-41. The evidence is undisputed that Mother was offered assistance in accomplishing each of those goals over the course of the CHINS proceedings and failed to cooperate with service providers. When asked whether "there [was] any service that [she had] asked [for] from [DCS] or from the Court that wasn't provided" to her, Mother responded, "No, I never asked." *Id.* at 89. Kelsey Andrews, the CASA, testified that Mother's "lack of stability" was not likely to change in the future. *Id.* at 195. Mother's contentions on appeal amount to a request that we reweigh the evidence, which we will not do. The trial court's findings support the trial court's conclusion

that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to Child's well-being.[4]

## *Best Interests*

[15] In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010). "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests." *Castro v. State Office of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*. "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a

---

[4] We note that the evidence also supports the trial court's conclusion that there is a reasonable probability that Mother will not remedy the conditions that resulted in Child's removal. Mother contends that her recent gains in sobriety and maintaining a residence is clear and convincing evidence that those conditions have been remedied. However, as our supreme court reiterated in *E.M. v. Indiana Dep't of Child Servs.*, 4 N.E.3d 636, 643 (Ind. 2014),

> the trial court must judge a parent's fitness "as of the time of the termination proceeding, taking into consideration evidence of changed conditions," *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 152 (Ind. 2005)—balancing a parent's recent improvements against "habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation." *K.T.K.[ v. Indiana Dep't of Child Servs.*], 989 N.E.2d [1225,] 1231 [Ind. 2013] (quoting *Bester*, 839 N.E.2d at 152) (internal quotation marks omitted). We entrust that delicate balance to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior.

finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d at 224.

[16] Again, Mother's contention on this issue amounts to a request that we reweigh the evidence, which we will not do. Andrews, the CASA, summed up the evidence showing that termination is in Child's best interests as follows:

> I think throughout the case there's been a concern with stability that a child would need and I believe where she currently is the stability is offered to her, so I'd be concerned going forward that we would never be able to get to the stability point that [Child] needs.

Tr. at 195. Further, both Andrews and Taylor Fristoe, a case manager with DCS, testified that they believed that termination of Mother's parental rights is in Child's best interest. The trial court acknowledged Mother's recent sobriety, but the court, in effect, concluded that Mother's efforts were too little, too late. We hold that the totality of the evidence supports the trial court's conclusion that termination is in Child's best interest. The trial court did not err when it terminated Mother's parental rights to Child.

[17] Affirmed.

Robb, J., and Crone, J., concur.